## MATTHEWS v. OKLAHOMA PUBLISHING CO.

No. 12476—Opinion Filed Sept. 25, 1923.

1. **Civil Rights—Liberty of Speech and of Press—Constitutional Law.**

The Constitution of the state of Oklahoma provides: "Every person may freely speak, write, or publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press."

2. **Libel and Slander—"Privileged Communications"—Statute.**

Section 497, Compiled Statutes of Oklahoma, 1921, defines a privileged communication as one made: "By a fair and true report of any legislative or judicial or other proceeding authorized by law. or anything said in the course thereof, and any and all expressions of opinion in regard thereto. and criticisms thereon, and any and all criticisms upon the official acts of any and all public officers, except where the matter stated of and concerning the official act done, or of the officer, falsely imputes crime to the officer so criticized."

3. **Same—Libelous Publications—Public Affairs—Question for Court.**

Where it is admitted that the articles complained of were published at a time when the Legislature was in session and an investigation was made, or was being made, of the State Industrial School for Girls, and that the articles dealt with the condition of the school, reports of certain committees of the Legislature and plaintiff's connection with the institution by virtue of his office as Commissioner of Charities and Corrections, and where the circumstances under which the publication was made are undisputed, it is exclusively for the court to determine whether the occasion on which it was made renders the articles absolutely or qualifiedly privileged, or whether the publications were libelous per se.

4. **Same—Construction of Language.**

It is the duty of the court to determine whether the language used in the publication can fairly or reasonably be construed to have the meaning fairly imputed to it in the petition, and the words used in the articles are to be construed in their most natural and obvious meaning and in the sense that they would be understood by those reading the articles.

5. **Pleading—Demurrer to Petition—Scope of Admission.**

Where a demurrer is interposed by the

defendant to the petition of plaintiff, the demurrer only admits the truth of the facts pleaded, but does not admit the truth of the inference of the pleader based on the facts pleaded, unless the facts themselves are sufficient to authorize such inference.

**6. Libel and Slander—Words Not Libelous Per Se—Duty of Court.**

If alleged defamatory words are not actionable on their face, but derive a defamatory import from extrinsic facts and circumstances, which are pleaded by way of inducement, colloquium, and innuendo, it becomes the duty of the trial court to determine whether the language used in the publication can fairly and reasonably be construed to have a meaning imputed to it by the pleader, and the court must determine that the words are susceptible of the meaning attributed to them by the pleader before the defendant can be put upon his proof to a jury.

**7. Same—Demurrer to Petition.**

Where no special damages are alleged in the petition, if the publication complained of is not libelous per se, then a demurrer interposed to the petition should be sustained by the court.

**8. Same—Criticism of Officers—Privileged Publication.**

Where the publication complained of deals only in criticism of the official acts of a public officer, and where the matter contained in said publication concerning the official act done or of the officer himself does not falsely impute crime to the officer so criticized, the publication is privileged.

(Syllabus by Thompson, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court. Garvin County; W. L. Eagleton, Judge.

Action by William D. Matthews, against the Oklahoma Publishing Company, a corporation. Judgment for defendant. Plaintiff brings error. Affirmed.

J. B. Dudley and Blanton & Osborn, for plaintiff in error.

Embry, Johnson & Tolbert, for defendant in error.

Opinion by THOMPSON, C. This action was commenced in the district court of Garvin County, Okla., by William D. Matthews, plaintiff in error, against the Oklahoma Publishing Company, a corporation, defendant in error.

The parties will be referred to in this opinion as plaintiff and defendant, just as they appeared in the lower court.

The petition alleges, in substance, that plaintiff is a married man, 74 years old, and that he has been, since January 1915, the duly elected, qualified, and acting Commissioner of Charities and Corrections of the state of Oklahoma; that the defendant is now and was during all times hereinafter mentioned a private corporation, duly organized and existing under the laws of the state of Oklahoma, with its principal place of business at Oklahoma City, owning, editing, printing, publishing, distributing, and circulating throughout the state of Oklahoma and particularly in Garvin county, Okla., two daily publications, one known as the Daily Oklahoman and the other as the Oklahoma City Times; that said publications have a large and extensive circulation throughout the entire state and go, as a matter of fact, to practically every home in the state and particularly is this true as to Garvin county; that plaintiff has been for 20 years past a minister of the Methodist Episcopal Church and had been actively engaged in the ministry of said church, particularly prior to the time he had been elected to the official position of Commissioner of Charities and Corrections, by reason of which and by reason of his official position, has a very wide and extensive acquaintance throughout the state of Oklahoma and particularly in Garvin county, Okla.; that in February, 1916, the defendant unjustly inaugurated a systematic criticism of plaintiff and his offical conduct as Commissioner of Charities and Corrections during his term of office and opposed him in the general election in 1918; that the defendant in its edition of the Daily Oklahoman, under date of January 31, 1919, willfully, maliciously and wickedly composed, edited, published, printed, distributed, and circulated, in Garvin county, Okla., where the same was generally read, and throughout said state of Oklahoma, concerning him, the following false, malicious, libelous, defamatory and unprivileged publication entitled, "Matthews Must Go." Then follows the printed article, which deals with the action of the committee of the Legislature in its investigation of its management of the Industrial School for Girls, which charges the management of the institution is the official duty of the Commissioner of Charities and Corrections and states that his negligence was exposed by the committee report and criticized his report as being worthless, in which the article claimed that plaintiff reported that the institution had been efficiently conducted and that he had tried to shift the responsibility to the former governor and that the revolting conditions, which were prevailing in the institution, were chargeable to the negligence and incapacity of Commissioner Matthews, and winds up by saying:

"To let such an incompetent remain in office would be an affront to the sovereignty and decency of this state and an immeasurable wrong to the luckless wards of the state, whom the people are trying to care for.

"Matthews must go.

"His impeachment is an obligation, which the Legislature, by its own admirable energy, had incurred to the people of this state."

And the petition claims that said publication exposed the plaintiff to public hatred, contempt, ridicule, and obloquy and deprived him of public confidence and injured him in his office and occupation, and that by reason of the publication, distribution, and circulation of said article he claims general damages in the sum of $15,000.

Then follows 11 other separate and distinct articles, published at different times by defendant, as eleven other separate and distinct causes of action, for which he claims separate damages in different amounts, the total of which, under all of the 12 causes of action, amounts to $180,000, but no special damages are claimed.

It would require too much space in this opinion to set out each separate and distinct cause of action, as the first cause of action contains, in a general way, the nature of the articles published by defendant, complained of by plaintiff.

To each separate cause of action the defendant filed a separate demurrer on the general ground that each cause of action contained in plaintiff's petition failed to state facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendant.

Upon presentation of the demurrer to the trial court the demurrer was sustained to each separate cause of action and the plaintiff elected to stand on his petition, and the court entered judgment dismissing the action at plaintiff's costs, to which the plaintiff excepted and the cause comes to this court regularly upon the appeal from the lower court from the order sustaining the demurrer to plaintiff's petition and assessing costs against plaintiff and dismissing the petition of plaintiff.

This appeal presents only questions of law raised by the demurrer to the petition of plaintiff, and it, therefore, becomes necessary for us to examine the constitution, statutes, and decisions of our court in construing the law of libel in force in this jurisdiction as applicable to the facts pleaded in this case.

Section 22 of Bill of Rights of our Constitution provides:

"Every person may freely speak, write, or publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press."

The statute law of the state, found at section 495, Compiled Statutes of Oklahoma of 1921, defines libel as follows:

"Libel is a false or malicious unprivileged publication by writing, printing, picture, or effigy or other fixed representation to the eye which exposes any person to public hatred, contempt, ridicule or obloquy, or which tends to deprive him of public confidence, or to injure him in his occupation, or any malicious publication as aforesaid, designed to blacken or vilify the memory of one who is dead, and tending to scandalize his surviving relatives or friends."

The above quoted section refers to unprivileged publications, and section 497, Compiled Statutes of 1921, defines a privileged communication in the following language:

"A privileged publication or communication is one made:

"First. In any legislative or judicial proceeding or any other proceeding authorized by law;

"Second. In the proper discharge of an official duty;

"Third. By a fair and true report of any legislative or judicial or other proceeding authorized by law, or anything said in the course thereof, and any and all expressions of opinion in regard thereto, and criticisms thereon, and any and all criticisms upon the official acts of any and all public officers, except where the matter stated of and concerning the official act done, or of the officer, falsely imputes crime to the officer so criticized.

"In all cases of publication of matter not privileged under this section, malice shall be presumed from the publication, unless the fact and the testimony rebut the same. No publication which, under this section, would be privileged, shall be punishable as libel."

Section 498 of the Compiled Statutes of Oklahoma of 1921 sets forth the necessary pleadings—proof and defenses, and cause of libel—as follows:

"In all civil actions to recover damages for libel or slander, it shall be sufficient to state generally what the defamatory matter was, and that it was published or spoken of the plaintiff, and to allege any general or special damage caused thereby, and the plaintiff to recover shall only be held to prove that the matter was published or spoken by the defendant concerning the

plaintiff. As a defense thereto the defendant may deny and offer evidence to disprove the charges made, or he may prove that the matter charged as defamatory was true, and in addition thereto, that it was published or spoken under such circumstances as to render it a privileged communication."

It is admitted in the brief of plaintiff that the articles complained of were published at a time when the Legislature was in session and an investigation was made. or was being made, of the State Industrial School for Girls and that the articles dealt with the condition of the school, report of certain committees of the Legislature and plaintiff's connection with the institution by virtue of his office as Commissioner of Charities and Corrections.

This decision must be based upon the propositions as to the criticism of the official acts of the Commissioner of Charities and Corrections, and the expression of opinion in regard to the investigation then going on, and whether the articles are privileged under the statute, heretofore quoted, and whether they falsely impute crime to the plaintiff herein as Commissioner of Charities and Corrections.

Where the circumstances under which the publication was made are undisputed, it is exclusively for the court to determine whether the occasion on which it was made renders the articles absolutely or qualifiedly privileged or whether the publications were libelous per se.

It is the duty of the court to determine whether the language used in the publication can fairly or reasonably be construed to have the meaning fairly imputed to it in the petition, and the words used in the articles are to be construed in their most natural and obvious meaning and in the sense that they would be understood by those reading the articles.

The demurrers to the different causes of action in the petition only admit the truth of the facts pleaded but do not admit the truth of the inference of the pleader based on the facts pleaded, unless the facts themselves are sufficient to authorize such inference. If alleged defamatory words are not actionable on their face, but derive a defamatory import from extrinsic facts and circumstances, which are pleaded by way of inducement, colloquium and innuendo, it becomes the duty of the trial court to determine whether the language used in the publication can fairly and reasonably be construed to have a meaning imputed to it by the pleader and the court must determine that the words are susceptible to the meaning attributed to them by the pleader before the defendant can be put upon his proof to a jury.

In support of the above reasoning we cite the following decisions of this court: Cobb v. Okla. Publishing Co., 42 Okla. 314, 140 Pac. 1079; German-Amer. Ins. Co. v. Huntley et al., 62 Okla. 39, 161 Pac. 815; Phoenix Printing Co. v. Robinson, 80 Okla. 191, 195 Pac. 487; Kee et al. v. Armstrong, Byrd & Co., 75 Okla. 84, 182 Pac. 494.

It is further admitted in brief of plaintiff that:

"No special damages are alleged in any of the counts and that if none of the publications set forth in the various counts are libelous per se, then the judgment of the trial court should be affirmed."

We have examined closely each and every article set forth in the petition, have read all of the authorities cited in the interest of plaintiff in the brief of counsel for plaintiff, and under the decisions of this court and the canon of construction laid down by the courts of this state and other states of the Union, we cannot find that any definite and certain criminal action was imputed to the plaintiff, nor can we find that any of his individual acts have been criticized or commented upon, but that each and every article complained of, comes within the third section of the statute of privileged publication, as laid down by statute law of this state, and he being a public officer and the articles in question dealing only with a report of the proceedings of the committee of the Legislature, in its investigation of one of the charitable institutions of this state, in which the public was vitally interested, which was under the supervision of plaintiff, as Commissioner of Charities and Corrections, it is the opinion of the court that such comments and criticism come under the head of privileged publications of communications and that upon the admissions of counsel in their brief, as above set forth in this opinion and the allegations of the petition, the petition is suject to demurrer and the judgment of the court in sustaining said demurrer was proper and right and it should be and is hereby affirmed.

By the Court: It is so ordered.