Leodis STRONG, Appellant,

v.

OKLAHOMA PUBLISHING
CO., Appellee.

No. 81464.

Court of Appeals of Oklahoma,
Division No. 1.

June 20, 1995.

Melvin C. Hall, Douglas A. Wilson, Tulsa, for appellant.

B.J. Rothbaum, Jr., Oklahoma City, for appellee.

### MEMORANDUM OPINION

CARL B. JONES, Judge:

On December 17, 1991, the *Daily Oklahoman*, the preeminent daily newspaper in Oklahoma City, published a front-page story about the ongoing rape trial of Willie Coakley III under the headline "Coakley Denies Rape of 3 City Women." The story stated that Coakley was being tried on three counts of rape, three counts of burglary, and one count of anal sodomy; that police suspected Coakley in a dozen other rapes; and that the arresting officer had obtained Coakley's fingerprints after Coakley lied about his prior criminal record. A photograph of an Afro-American couple accompanied the story, with the following cutline: "Barbara Coakley and her husband, rape suspect Willie Coakley III, share a break from his trial outside an Oklahoma County courtroom Monday."

Unfortunately, the photograph depicted not Willie Coakley III and his wife, but Appellant Leodis Strong and Coakley's wife. Strong had never raped nor burgled nor even been arrested or accused of any crime. At the time he was, in fact, a minister of Avery Chapel AME Church, and vice-president of the Millwood School Board.

Realizing its error, the *Oklahoman* published a correction the next day on the front page, consisting of the same photograph in a box captioned "Setting It Straight" (adjacent to another story about the Coakley rape trial) with the explanation: "The Rev. Dr. Leodis Strong, right, pastor of the Avery Chapel AME Church, was mistakenly identified in Tuesday's editions of The Oklahoman as rape suspect Willie Coakley III. Strong is shown here with Barbara Coakley, wife, of the defendant, at the Oklahoma County courthouse. The Oklahoman apologizes for the error."

Rev. Strong subsequently commenced this action against Appellee Oklahoma Publishing Company ["OPUBCO"] alleging the December 17, 1991 publication defamed him and portrayed him in a false light. OPUBCO answered, admitting its error, and moved for summary judgment, asserting the erroneous publication amounted only to libel *per quod* and not libel *per se*, and that Rev. Strong's defamation claim should be dismissed for lack of any allegation of special damages. The trial court granted OPUBCO's motion. Although the court rejected OPUBCO's assertion that Rev. Strong was a public figure, it agreed that the newspaper's mistake was

merely libel *per quod*.[1] Rev. Strong dismissed his claim for false light invasion of privacy, and the trial court entered final judgment for OPUBCO.

We are thus presented the question whether publication of Rev. Strong's picture and the accompanying cutline erroneously identifying him as Coakley was sufficient of itself to defame him. At the outset, we recognize the continuing vitality of the legal distinction between statements which are defamatory *per se* and those which are defamatory *per quod:*

> [I]n connection with slander and libel, the term ["per se"] is applied to words which are actionable because they, of themselves, without anything more, are opprobrious. In other words, a publication is actionable per se when the language used therein is susceptible of but one meaning, and that an opprobrious one, and the publication on its face shows that the derogatory statements, taken as a whole, refer to the plaintiff, and not to some other person.

*Hargrove v. Oklahoma Press Publishing Co.,* 130 Okla. 76, 265 P. 635, 636 (1928); *see Fite v. Oklahoma Publishing Co.,* 146 Okla. 150, 293 P. 1073, 1075 (1930).

 In determining whether the *Oklahoman's* publication amounts to libel *per se* or *per quod,* we consider the publication in its entirety, and ascribe to the words used their ordinary, natural, and obvious meanings. *Sellers v. Oklahoma Publishing Co.,* 687 P.2d 116, 120 (Okla.1984); *Miskovsky v. Tulsa Tribune Co.,* 678 P.2d 242, 247 (Okla. 1983). Applying those principles to the present case, the publication is plainly libelous *per se.* We discern no way in which the appellation of "rape suspect" can have an innocent, non-defamatory connotation.

Nonetheless, OPUBCO contends its publication was libel *per quod* because in order to be defamatory the reader would have to possess the additional knowledge that the man depicted in the photograph was not Willie Coakley. With that proposition we disagree. In our view, the objectionable publication, considered in its entirety, and without reference to any other fact, is reasonably susceptible of only one interpretation, that the man therein depicted is a suspected serial rapist and burglar. Such an interpretation cannot but expose the man to public hatred, contempt, ridicule, or obloquy. 12 O.S.1991 § 1441.

In *Brown v. Tallahassee Democrat, Inc.,* 440 So.2d 588 (Fla.App.1983), the court reversed dismissal of the plaintiff's action for defamation. There, as here, the defendant newspaper had mistakenly published the plaintiff's photograph over the name of a murder defendant adjacent to a story about the trial of the accused murderer. In considering whether such juxtaposition may have stated a false and defamatory fact as to the plaintiff, the Florida District Court of Appeal wrote:

> The *Democrat* chooses to publish for those of ordinary discriminating powers, not exclusively for those who would know that the visage depicted was not that of the person named in the cutline caption as advertising the makeup editor's careless error. The *Democrat* also chooses to publish for readers whom it and other publishers have made wary of aliases and other suspicious habits of reputed criminals— those readers who despite personally knowing [the plaintiff] might attribute to the *Democrat,* whose reporter covered the Madison trial, greater knowledge of the accused's identity and appearance than that of any reader. In other words, we

---

1. The trial court's order reads, in its entirety:
"Having reviewed the briefs herein and having heard argument, this Court finds that the mistake made by the *Daily Oklahoman* does not constitute libel *per se,* but does constitute libel *per quod.* The Plaintiff, thus, must plead special damages.
"This Court further finds that this Plaintiff is not a public official, as defined in *Johnston v. Corinthian Television Corp.,* 583 P.2d 1101 (Okla..].1978). Nor is the Plaintiff a public official as defined by *New York Times Co. v. Sullivan,* 378 [376] U.S. 254 [84 S.Ct. 710, 11 L.Ed.2d 686] (1964).
"The alleged libel does not relate to any official capacity of the Plaintiff, President of the School Board of Millwood School District. The *Daily Oklahoman* has a far greater reach in its news coverage than the 'public' aspects of the Plaintiff's position both as minister and as school board president."

cannot disassociate the photograph of [the plaintiff] from the import of the story without dictating that the ordinary reader circumscribe his interpretation of the publication by doubt and disbelief. This we cannot do in law.

*Brown,* 440 So.2d at 590.

We conclude that the trial court was in error when it held as a matter of law that the publication of Rev. Strong's picture with the story about Willie Coakley was only libel *per quod.* Thus the action was not properly dismissable at the summary adjudication stage because the Plaintiff did not allege or show the existence of facts which would demonstrate special damages.[2]

 The Appellee also raises a point which would render the judgment correct despite the Trial Court's erroneous determination that the false depiction was at most, libel *per quod.* This argument must be addressed despite the fact there was no appellate error correction proceeding brought by the successful party here. The Appellee is allowed to show that errors existed in the resolution of the cause in the Trial Court which would prove the ultimate correctness of the judgment without filing a separate appeal. *Price v. Reed,* 725 P.2d 1254 (Okla. 1986).

 The Appellee states that the trial court erred in determining that Rev. Strong was not a public figure. As a public figure or public official, the plaintiff would be required to demonstrate the publication was made with actual malice in order to recover. *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). The Appellee then makes the statement that since an immediate apology was issued the next day, actual malice cannot exist. Establishing issuance of a later apology does not seem to negate the existence of actual malice at the time of publication (in the context of a summary judgment proceeding) under the express language of 12 O.S.1991 § 1446a. That statute provides that where falsity is due to an honest mistake and a retraction is printed meeting certain guidelines, only actual damages may be recovered. However existence of an honest mistake is reserved as a question of fact for the jury. The statute so provides using the mandatory language "shall be a question of fact to be determined by a jury".

 Plaintiff was the vice-president of the Millwood school board at the time the incorrectly labeled picture was published. Was the Trial Court correct in determining the Reverend was not a public figure or public official at the summary judgment stage of this proceeding? The distinction between citizen and public official is properly made by the trial court at the summary stage of the proceeding, *Hodges v. Oklahoma Journal Publishing Co.,* 617 P.2d 191 (1980). It is apparent here that the Plaintiff is a public *official* and that determination necessitates the actual malice standard. Whether or not the Appellant is a public official cannot be determined by reference to state law standards. Definitions of public officials for local administrative purposes are not suitable for purposes of national constitutional questions. The public official designation of *New York Times v. Sullivan,* 376 U.S. 254 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), applies to those in government who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs. At the outset, it might have been arguable that a member of a small school board might not qualify as a public figure because of the lack of the substantial responsibility requirement. However, this requirement has been interpreted in this state to apply to a physical education teacher, and it cannot now be seriously argued it would not

---

2. While this is an appeal from a order issued pursuant to Rule 13, Rules for District Courts, 12 O.S.1991, Ch. 2, App., the motion was couched in terms of failure to allege special damages; the absence of allegations other than exposure to public hatred, contempt, ridicule or obloquy, which tends to injure plaintiff in his occupation and profession and a diminution in plaintiff's good name and reputation. As noted in *Miskov-* *sky v. Tulsa Tribune* 678 P.2d 242 (Okla.1983) such allegations are insufficient as a matter of law to comprise a plea of special damage. That case notes that the mere recitation of the statutory language of 12 O.S. § 1444 does not meet the requirement of alleging the facts of special damage as required in the earlier case of *Fite v. Oklahoma Publishing Co.,* 146 Okla. 150, 293 P. 1073 (1930).

apply to a school board member possessing the power to officially influence the employment of teachers. *Johnston v. Corinthian Television Corporation*, 583 P.2d 1101 (Okla. 1978). The debate may be whether a night watchman is a public official, but clearly the Plaintiff here meets the test of one who's position must be one which would invite public scrutiny and discussion of the person holding it, entirely apart from the scrutiny and discussion occasioned by the charges in controversy. *Rosenblatt v. Baer*, 383 U.S. 75, 86 S.Ct. 669, 676 15 L.Ed.2d 597 (1966).

Appellant contends that he is not a public figure[3], and the actual malice standard should not apply, because of the fact the libel did not relate to his official conduct. The U.S. Supreme Court has refused any effort to impose a restriction of the actual malice standard only upon allegations relating to official duties when criminal conduct is the subject of the libel. *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 91 S.Ct. 621, 28 L.Ed.2d 35 (1971), teaches that as a matter of constitutional law, charges of criminal conduct, no matter how remote in time or place, can never be irrelevant to official's or candidate's fitness for office for purposes of application of "knowing falsehood or reckless disregard" rule concerning recovery of damages for libel or slander of public official or public figure. U.S.C.A. Const.Amends. 1 and 14. As stated in *Garrison v. Louisiana*, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964):

> The New York Times rule in not rendered inapplicable merely because an official's private reputation, as well as his public reputation, is harmed. The public official rule protects the paramount public interest in a free flow of information to the people concerning public officials, their servants. To this end, anything which might touch on an official's fitness for office is relevant. Few personal attributes are more germane to fitness for office than dishonesty, malfeasance or improper motivation, even though these characteristics may also affect the official's private character.

Accordingly, the summary judgment is free from reversible error presented to this court, and the Judgment rendered below in favor of OPUBCO is affirmed.

AFFIRMED.

HANSEN, P.J., concurs.

JOPLIN, J., dissents.

---

3. For the purpose of this discussion we have used the correct term public official.